2002 ME 122

**STATE of Maine**

v.

**Gatherius WHITE a.k.a. Jatherius White.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 30, 2001.

Decided: July 31, 2002.

Reconsideration Granted Sept. 11, 2002.

---

5. Palanza testified that the tenants damaged the house and failed to pay their rent, thus she evicted them.

Geoffrey Rushlau, DA, F. Todd Lowell, ADA, Wiscasset, for the State.

Howard O'Brien, Stike, Goodwin & O'Brien, Portland, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Gatherius White appeals from a judgment entered in the Superior Court (Lincoln County, *Gorman, J.*) following a jury trial finding him guilty of elevated aggravated assault with a dangerous weapon (Class A), 17–A M.R.S.A. § 208–B(1)(A) (Supp.2001), and aggravated assault (Class A, with other enhancements), 17–A M.R.S.A. §§ 208(1)(A), 1252(4–A) (1983 & Supp.2001). White contends that an incomplete jury instruction, as well as admitted hearsay, are obvious and not harmless errors respectively. We disagree and affirm.

## I. BACKGROUND

[¶ 2] The following facts are undisputed. White was drinking beer and whiskey with Wendell Golden at Tamara Schriver's house in Whitefield. White and Schriver were romantically involved, while Golden was a mutual friend. While Schriver lay

on the couch watching television, White and Golden began to argue at the kitchen table about Schriver.

[¶ 3] The argument escalated when White entered the living room and kicked Schriver in the ribs. Schriver testified that White did not kick her hard, but did it "to egg [Golden] on." Several hours of altercation between White and Golden followed, resulting in injuries to White. Around 11:00 P.M., the fighting subsided and White went into the bedroom, after which Schriver followed; Golden slept on the couch.

[¶ 4] Around 1:00 A.M. White swung a hammer at Golden's head fracturing his skull behind the ear. White testified that he did so in self-defense; he had arisen from bed to find Tylenol in the kitchen, and as he walked back toward the bedroom through the living room, Golden said, "nigger, do you want some more beating, do you want another whooping.... I took [whatever tool was in Golden's hand] and just started swinging at him." Golden testified that he woke up "covered with blood," and "didn't really know what had happened." Schriver testified she responded to Golden's calls for help and saw White "standing there with a ball pein [sic] hammer in his hand."

[¶ 5] During the trial, Trooper Blaine Bronson recounted that when he first questioned Golden, "he indicated that he believed Jay White was the subject who had [inflicted the head injury]." Defense counsel requested a sidebar stating: "The trooper just said exactly what I was concerned he would say. There is no way that Mr. Golden from his testimony could

have any direct knowledge about who struck him, and so anything he said to the trooper had to be hearsay and we've got hearsay on hearsay." The court responded, "the fact that Mr. Golden said it isn't hearsay because—well, the trooper took it as part of his investigation." The State asserted it would not "get into that anymore," and the court "noted" the objection. Defense counsel did not request a curative instruction or that the testimony be stricken.

[¶ 6] Both the State and defense counsel stated that they had no objections to the jury instructions they had discussed with the judge. The court instructed, in relevant part:

> A person is justified in using deadly force upon another person when, one, he reasonably believes that the other person is about to use unlawful deadly force against him, and two, he reasonably believes that his use of deadly force is necessary to defend himself. A person is never justified in using deadly force if he provokes the encounter leading to the use of deadly force.

The jury found White guilty of elevated aggravated assault with a dangerous weapon and aggravated assault, and he filed this appeal.[1]

### A. Jury Instruction

[¶ 7] White contends that the court committed obvious error by failing to restrict the provocation that would deny him a self-defense justification to provocation "[w]ith the intent to cause physical harm." 17–A M.R.S.A. § 108(2)(C)(1) (1983).[2] He contends that the court's instruction im-

---

1. White was sentenced to twelve years with all but four years suspended for the elevated aggravated assault with a dangerous weapon, and a four-year concurrent term for the aggravated assault.

2. The statute provides, in pertinent part:

> [A] person is not justified in using deadly force [in self-defense], if:
> (1) With the intent to cause physical harm to another, he provokes such other person to use unlawful deadly force against anyone ....

17–A M.R.S.A. § 108(2)(C)(1).

plies that *any* provocation could nullify a defendant's claim to self-defense. White contends because self-defense was his "only defense," a complete instruction was "critical." The State contends that the evidence did not generate the self-defense justification, and that, even if White was entitled to a self-defense instruction, the incomplete instruction does not constitute obvious error.

■ [¶ 8] For obvious error to require the reversal of a judgment, the error must deprive the party of a fair trial or result in such a serious injustice that, in good conscience, the judgment cannot be allowed to stand. *In re Joshua B.*, 2001 ME 115, ¶ 11, 776 A.2d 1240, 1244 (citing *State v. Griffin*, 438 A.2d 1283, 1285 (Me.1982)). When reviewing a jury instruction for obvious error, we have recognized that "[a] conviction should not rest on ambiguous and equivocal instructions to the jury on a basic issue." *State v. Bahre*, 456 A.2d 860, 865 (Me.1983) (citing *Bollenbach v. United States*, 326 U.S. 607, 613, 66 S.Ct. 402, 90 L.Ed. 350 (1946)). The obviousness of the error must, however, be apparent in the context of the trial as a whole. *State v. Boyle*, 560 A.2d 556, 557–58 (Me.1989).

[¶ 9] Here, White agreed to the instruction that he now challenges. The State argued successfully that the victim was attacked while sleeping. White argued that the victim threatened him and raised the hammer, which White then seized, attacking the victim in self-defense. The witnesses agreed that before 1:00 A.M., White and Golden had been in separate rooms for approximately two hours. Nei-ther party presented evidence of any provocative words or acts by White, other than the assault itself, in the course of the 1:00 A.M. incident.

■ [¶ 10] In this context, the incomplete provocation instruction was not obvious error depriving White of a fair trial. *See Joshua B.*, 2001 ME 115, ¶ 11, 776 A.2d at 1244. The instruction may have even supported White's theory of the case by removing any justification for an assaultive act by Golden toward White, as White testified had occurred. At a minimum, the provocation issue was waived, 17–A M.R.S.A. § 101(1) (Supp.2001),[3] and White cannot now raise an error that was not apparent during the course of the trial, *see Boyle*, 560 A.2d at 558. *See* M.R.Crim.P. 30(b).

## B. Hearsay

■ [¶ 11] White contends that Trooper Bronson's testimony was offered to establish that White assaulted Golden; because there were no other witnesses who testified that White hit Golden with the hammer, without it, White "may not have had to raise a defense, and may have been acquitted based on the [S]tate's failure to prove all of the elements of the case. This hearsay evidence forced [White] to testify."

[¶ 12] The State contends that the testimony was not offered to prove the truth of the matter asserted; rather, it explained Trooper Bronson's steps in his investigation. The State contends that even if the statement is hearsay, its admission is harmless error.

---

3. Section 101(1) states:

The State is not required to negate any facts expressly designated as a "defense," or any exception, exclusion or authorization that is set out in the statute defining the crime by proof at trial, unless the existence of the defense, exception, exclusion or authorization is in issue as a result of evidence admitted at the trial that is sufficient to raise a reasonable doubt on the issue, in which case the State must disprove its existence beyond a reasonable doubt. This subsection does not require a trial judge to instruct on an issue that has been waived by the defendant. The subject of waiver is addressed by the Maine Rules of Criminal Procedure.

 [¶ 13] Because the court did not strike Bronson's testimony nor give a curative instruction, and merely "noted" White's objection, the court admitted the statement made by Bronson that "[Golden] believed Jay White was the subject who had [inflicted the head injury]." A trial court's "decision to admit alleged hearsay is a question of law," which we review de novo. *State v. Eaton*, 669 A.2d 146, 149 (Me.1995).

[¶ 14] We have held that hearsay identification testimony is inadmissible. *State v. Flash*, 418 A.2d 158, 162 (Me.1980) (declaring that a detective's testimony about the victim's photographic identification of the defendant was erroneously admitted). Here, however, Bronson's testimony may not have been offered to prove the truth of the matter asserted—that White assaulted Golden—but could have been offered to illustrate why the trooper arrested White, or as the court stated, "the trooper took it as part of his investigation."

[¶ 15] The source of Bronson's testimony, Golden, testified during the trial and was subject to cross-examination thereby lending some reliability to the hearsay. *See State v. Rameau*, 685 A.2d 761, 764–65 (Me.1996) ("The key to the admissibility of hearsay is its reliability.... [T]he thorough cross-examination of the victim in the criminal case provides a good measure of reliability."). Yet, admitting the out-of-court statement for the purpose of explaining the trooper's conduct or because the statement was taken during his investigation was error.

 [¶ 16] Although Bronson's testimony is inadmissible hearsay, the error in this case was harmless. A preserved error should be treated as harmless "if it is highly probable that the error did not affect the factfinder's judgment." *State v. Kalex*, 2002 ME 26, ¶ 22, 789 A.2d 1286, 1292 (internal quotation marks omitted). There is enough admissible testimony to bar a conclusion that the contested out-of-court statement meaningfully influenced the verdict. *See Henriksen v. Cameron*, 622 A.2d 1135, 1144 (Me.1993) (admission of cumulative testimony is harmless error); *State v. Johnson*, 434 A.2d 532, 536 (Me. 1981) (affirming judgment when "the exclusion of the inadmissible hearsay could not have rationally brought about a verdict of not guilty, and the error was harmless"); *State v. Porter*, 404 A.2d 590, 598 (Me.1979) (holding that "[i]dentification of the [defendant] having been established by other more probative evidence, the admission of ... hearsay-based testimony was therefore harmless"). Though White contends Bronson's testimony "forced" him to testify, circumstances at trial often impel a defendant to take the stand; if the State had no evidence at all that White committed the assault other than Bronson's testimony, then a colorable argument could be made that the inadmissible hearsay affected a substantial right. However, because others testified that White was in the house, had been aggressive toward Golden, and was seen after the injury holding a hammer, it is reasonable to infer the impact of *this* testimony caused White to take the stand and not just the admission of Bronson's testimony. Thus, it is highly probable that the error did not affect the outcome of the trial.

The entry is:

Judgment affirmed.