MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2022 ME 7
Docket:      Oxf-21-172
Submitted
  On Briefs:  October 20, 2021
Decided:     January 27, 2022

Panel:       STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

TERESA D. NEEDHAM

v.

CHARLES D. NEEDHAM

JABAR, J.

[¶1]  Charles D. Needham appeals from a divorce judgment entered by the District Court (Rumford, *Ham-Thompson, J.*) on May 11, 2021.  Among other provisions, the court awarded shared parental rights and responsibilities concerning the Needhams' minor children.  Because the court based that determination on hearsay evidence, we vacate the judgment.

## I.  BACKGROUND

[¶2]  Teresa D. Needham filed a complaint for divorce on December 2, 2019, and the court held a final hearing on February 18, 2021.  At the hearing, Charles was represented by counsel, but Teresa was not.  The record supports the following facts, which are not in dispute. *See Sulikowski v. Sulikowski*, 2019

2

ME 143, ¶ 2, 216 A.3d 893; *Teele v. West-Harper*, 2017 ME 196, ¶ 2, 170 A.3d 803.

[¶3]  During the hearing, the court heard testimony regarding Charles's substantiation by the Department of Health and Human Services for sexual abuse of a child.[1]  The matter came up for the first time when Teresa, while explaining what contact Charles had with the children during the pendency of the divorce proceedings, attempted to relate what an employee of the Department told her regarding its substantiation concerning Charles.  Charles objected on hearsay grounds, and the court sustained the objection.  After the court instructed Teresa to testify only about what she personally knew, she stated that the Department told her that Charles could not have contact with

---

[1]  The Department must receive and promptly investigate reports of child abuse and neglect. 22 M.R.S. § 4004(2)(A)-(B) (2021).  For each case the Department investigates, it must determine whether a child has been harmed and, if so, the degree of harm or threatened harm by a person with responsibility for the child's health or welfare. 22 M.R.S. §§ 4002(9), 4004(2)(C-1) (2021).  In each case, the Department makes that determination through a "substantiation process."  *Id.* § 4004(2)(C-1); 10-148 C.M.R. ch. 201 (effective May 15, 2017).  After investigating allegations of child abuse or neglect, the Department determines whether the investigated person is "substantiated," "unsubstantiated," or "indicated."  10-148 C.M.R. ch. 201, § III(B).  "'Substantiated' means an administrative determination made by the Department . . . that an individual or legal entity was the person responsible for a child who was subject to 'abuse or neglect' where either (1) the abuse or neglect was of high severity or (2) the individual or legal entity poses a threat of harm to children for whom the individual or legal entity may become responsible through employment or volunteer activities."  *Id.* § V(L-1).  "[T]he focus of the process is on the harm to the child and not blame of the person responsible for the child . . . ."  *Id.* § IV(B)(6).  A person who has been substantiated has the right to appeal the Department's finding of substantiation through an administrative process, which consists of a paper review followed by an administrative hearing.  *Id.* §§ VII(C)-(F), VIII-XI.  A substantiation determination may have adverse collateral consequences, including the loss of employment or government benefits.  *Id.* §§ V(C-1)(1)-(2), VII(B); *see also In re Ciara H.*, 2011 ME 109, ¶ 3, 30 A.3d 835; *In re Nicholas S.*, 2016 ME 82, ¶ 8, 140 A.3d 1226.

their children because of the substantiation. Charles again objected on hearsay grounds. The court once again sustained the objection and instructed the witness not to testify to what someone else told her. Teresa then offered a letter she received from a Department employee. Again, Charles objected on hearsay grounds, and, again, the court sustained the objection.

[¶4] After hearing testimony about Charles's contact with the children during the previous two years, the court asked Teresa why she believed that the court should not award Charles any rights of contact in the divorce judgment. She responded, "He has been substantiated by the Department." Charles objected again, but this time the court, without explanation, overruled the objection. Teresa then testified that Charles had been substantiated on two different occasions. The court asked why he had been substantiated. Teresa responded that "[h]e was substantiated for high severity sexual abuse and high severity emotional maltreatment, as well as the threat of the first substantiation," and added that "I believe based on [the] two substantiations, he is a threat to the children. And his behaviors escalated, and I don't think they are safe around him."

[¶5]   During cross examination, Charles's attorney elicited from Teresa that she had no knowledge of the evidence supporting the substantiations or of the process the Department followed to make those determinations.

[¶6]   Charles testified during the hearing that the Department first substantiated him in 2016 and concluded that he posed a low risk of abuse.  He also said that the Department made that determination based on charges pending against him in New Hampshire and that those charges were ultimately dismissed.   He further denied the allegations contained in a second substantiation from 2019, which, he said, he was in the process of appealing.

[¶7]   At the conclusion of his direct examination, the court began a lengthy examination of Charles regarding the Department's substantiations against him.   Charles's attorney immediately objected to the court's examination on hearsay grounds.  After a lengthy colloquy with counsel, the court overruled the objection, concluding, "The Court is not saying that the substantiation is accurate or inaccurate because Mr. Needham is in the appeal process, and it's not a final determination.  But the Court needs to be aware of what the Department has substantiated him for."   The court then elicited particulars from Charles regarding the 2019 substantiation, including that he was substantiated for mental anguish and abuse and the alleged sexual assault

of his former girlfriend's teenage daughter; that the substantiation for mental anguish and abuse was overturned after a paper review; and that no criminal charges related to this substantiation had been filed. Charles again denied all the allegations contained in the substantiation.

[¶8] The court issued a written judgment and stated that it had concerns about both parents. In addition to its concerns about Charles's substantiations, the court also had "significant concerns" about Teresa's ability to parent after it heard evidence that Teresa (1) threatened to stab one of her daughters with a pair of scissors, (2) pulled her step-daughter by the hair across a room, and (3) spanked her children with "inanimate objects."

[¶9] In light of all these concerns, the court ordered Charles to engage in a psychosexual evaluation. The court then allocated parental rights and responsibilities pending the outcomes of the psychosexual evaluation and substantiation appeal and ordered that (1) the children would primarily reside with Teresa and (2) Charles would have the right to supervised contact. The court further ordered, however, that if Charles's evaluation reflected that he is a low risk to children and if he successfully appealed the substantiation, then the children would primarily reside with him and supervised contact would no

6

longer be required.  Charles timely appealed.  *See* 19-A M.R.S. § 104 (2021); 14 M.R.S. § 1901 (2021); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶10]  The central issue before us is the admission of testimonial evidence regarding the substantiations against Charles.  Charles contends that the evidence regarding his substantiations is hearsay and that the court, despite its statement to the contrary, considered that evidence "for the truth of the matter asserted."  He further contends that this evidence prejudiced him because the court relied upon the 2019 substantiation in fashioning its award of parental rights and responsibilities and primary residence, which the court conditioned upon the results of a favorable psychosexual evaluation.  The judgment states: "If and when the psychosexual evaluation determines [Charles] is a low risk to children, the substantiation has been successfully appealed, [Charles] is employed where he works the day shift, and [Teresa has had an opportunity to object to] the evaluation, the children shall primarily reside with [Charles]."[2]

---

[2]  Although not raised on appeal, as a general matter it is the court's responsibility to award parental rights and responsibilities and the court may not condition a parent's parental rights upon the approval of a third party, such as a therapist.  Levy, *Maine Family Law* § 6.2[1] at 6-6 (8th ed. 2013); *see also Knight v. Knight*, 680 A.2d 1035, 1038 (Me. 1996); *Pearson v. Wendell*, 2015 ME 136, ¶¶ 32-37, 125 A.3d 1149.

**A.    Hearsay**

[¶11]  We review de novo a trial court's decision to admit evidence of a statement that may be hearsay.  *State v. White*, 2002 ME 122, ¶ 13, 804 A.2d 1146.  Hearsay is an out-of-court statement made by a declarant offered in evidence by a witness to prove the truth of the matter asserted and is generally inadmissible.  M.R. Evid. 801, 802.  Although M.R. Evid. 803(22) provides an exception to this rule for the admission of judgments of a previous conviction,[3] that exception is limited and "exclude[s] lesser offenses where the motivation to defend vigorously may be lacking."  Field & Murray, *Maine Evidence* § 803.22 at 505 (6th ed. 2007).  Accordingly, we have previously said that evidence of neither a traffic infraction adjudication nor a misdemeanor assault conviction was admissible to establish the facts underlying those determinations.  *See Morrell v. Marshall*, 501 A.2d 807, 808-09 (Me. 1985); *In re Thomas B.*, 1998 ME 236, ¶ 5, 719 A.2d 529.

[¶12]  In *Morrell*, we held that "[e]vidence of Marshall's traffic infraction adjudication was clearly hearsay."  501 A.2d at 808.  There, Marshall appealed from a Superior Court judgment entered after a jury found him liable for

---

[3]  M.R. Evid. 803(22) "makes evidence of a conviction of a crime punishable by imprisonment for one year or more admissible for the purpose of proving any fact essential to the judgment."  Field & Murray, *Maine Evidence* § 803.22 at 505 (6th ed. 2007).

8

damages suffered by the plaintiffs in an automobile collision. *Id.* We vacated the judgment because the trial court admitted evidence of Marshall's District Court adjudication for violating the "failure to yield" statute when he collided with the plaintiffs. *Id.* That adjudication was hearsay because "[i]t recounted a statement made by an out-of-court declarant (namely, the District Court adjudication) offered in evidence to prove the truth of the matter asserted (namely, that defendant was driving on the wrong side of the road at the time of the collision)." *Id.*

[¶13] Relevant here, we further explained:

The hearsay in question not only went to the heart of the factual issue that the jury had to decide, but also carried the heavy authority of a decision of the District Court. It put defendant in the position of asking the jury to second-guess the court that had already found that he had failed to yield, as well as the police officer who after investigation had charged him with that traffic infraction. That evidence effectively deprived defendant of an independent evaluation by the jury of the conflicting testimony regarding his negligence. He is entitled to a trial free of that handicap.

*Id.* at 809.

[¶14] Charles found himself in a similar situation during the final divorce hearing. As in *Morrell*, evidence of Charles's substantiation by the Department was clearly hearsay because it recounted a statement made by an out-of-court declarant, the Department, offered in evidence to prove the truth of the matter

asserted—that Charles had been substantiated by the Department for sexual abuse against a child.

[¶15]  During the trial, the court told Charles that it would not consider evidence of his substantiation for its truth.  The court explained that it: "is not saying that the substantiation is accurate or inaccurate because [Charles] is in the appeal process, and it's not a final determination.  But the Court needs to be aware of what the Department has substantiated him for."  Despite this statement, however, there can be no question that the court considered the evidence of the substantiation for its truth because there was no other evidence regarding allegations of sexual abuse against Charles upon which the court could have relied in crafting its judgment.  Thus, the evidence regarding Charles's substantiation was inadmissible hearsay.

**B.  Prejudicial Error**

[¶16]  Having determined that the court admitted hearsay evidence, we now consider whether that error was harmless.  We will hold that a preserved error is harmless only if it is highly probable that the error did not affect the judgment.  *White*, 2002 ME 122, ¶ 16, 804 A.2d 1146; *see also In re Scott S.*, 2001 ME 114, ¶¶ 24-25, 775 A.2d 1144.

[¶17]  Here, the trial court used the evidence of Charles's substantiation to conclude that it would not be in his children's best interests to grant him primary residence or unsupervised rights of contact until he successfully completed a psychosexual evaluation. *See* 19-A M.R.S. § 1653(3) (2021).  Again, because there was no other evidence regarding allegations of sexual abuse by Charles, we are certain that the evidence of the substantiation played an important role in the court's judgment. *See In re Elijah R.*, 620 A.2d 282, 285-86 (Me. 1993).

[¶18]  We understand why the court felt conflicted.  As the court said during the final hearing:

> [A]s it stands right now, I have a mother that yells and swears at at least one child, and appears to be more than one child, threatens to stab a child, threatens to beat children, grabs a stepdaughter by the hair and slaps her across the face, spanks the children with a spatula or inanimate objects, and claims she hasn't done that for a year, claims there isn't any bruising left over.

> Then over here, I have [Charles] that, based upon the evidence I've heard, has been substantiated twice, once in [2016], and once in 2019.  And what has come in is 2016, and there was low risk of abuse.  What's come in with respect to the 2019 is that there's a high severity of risk of abuse.  Granted, he's in the stage where he's appealing it.

> So where do I place these children?  I have two parents that possibly present a significant risk to these children.  The substantiation is still in the process of being appealed, and I question [Teresa's] behavior.  I -- I think the Court needs some

> frame of reference as to what he's been substantiated for. I'm not saying that it's true or it's not true, but I honestly don't know what to do, other than to call the Department at this point in time and say, I'm concerned about these three children, I need you to investigate, and investigate now, hold the proceedings as it pertains to the children, and have them come back and report to the Court because I, actually, am really concerned about these kids.

The court found itself in a very difficult situation because it had an obligation to render a decision in the best interests of the children. The court's dilemma was further compounded by the fact that Teresa was unrepresented by counsel.

[¶19] Nevertheless, the court did have other avenues it could have pursued before issuing its final judgment. The court certainly would have been justified in continuing the proceeding to hear testimony and consider additional evidence from the Department or other first-hand witnesses regarding the facts surrounding the substantiation. *See* M.R. Civ. P. 40(c); *cf. Bradshaw v. Bradshaw*, 2005 ME 14, ¶ 9, 866 A.2d 839. The court also could have ordered the Department to investigate the parents for suspected abuse as part of a custody study.[4] 19-A M.R.S. § 905 (2021); *see Ziehm v. Ziehm*, 433 A.2d 725, 727-29 (Me. 1981) (explaining the great evidentiary value of a custody study conducted pursuant to section 905's predecessor statute); *see also* Levy,

---

[4] In the judgment, the court did say that it "will be sending a copy of this Order to the [Department] requesting that the Department investigate this family."

12

*Maine Family Law* § 6.3[5] at 6-32 to -34 (8th ed. 2013). Lastly, the court could have appointed a guardian ad litem (GAL) pursuant to 19-A M.R.S. § 1507 (2021), and the GAL could have requested medical or psychological evaluations of the parties, *id.* § 1507(3)(B)(5).[5]

## C.    Conclusion

[¶20]  Here, most of the evidence concerning the allegations giving rise to the 2019 substantiation was elicited by the court during its extensive examination of Charles, which occurred despite the objection of his attorney. Given the explosive nature of the allegations of child sexual abuse and the effect of the evidence on the judgment, we cannot say that the error was harmless.[6] *See Banks v. Leary*, 2019 ME 89, ¶ 19, 209 A.3d 109.

[¶21]  We vacate the judgment and remand to the District Court to proceed in a manner consistent with this opinion.

---

[5]  Notes from a mediation session held in July 2020 show that the parties wanted the court to appoint a GAL and that Charles offered to pay for the GAL's services if Teresa could not contribute. On September 18, 2020, the court (*Spooner, M.*) held a hearing on a motion to appoint a GAL on September 18, 2020, and denied the request because it found that, by that time, neither parent had the ability to pay a retainer. Title 19-A M.R.S. § 1507(7) (2021) states that "[p]ayment for the services of the [GAL] is the responsibility of the parties, as ordered by the court." Given the court's justified concerns about this family, it could have asked an attorney rostered as a GAL to serve either pro bono or for a reduced fee. *See* M.R.G.A.L. 2(b)(5).

[6]  Allegations of sexual abuse of children are highly inflammatory. Although Charles did not object to the evidence of his substantiations on the ground that it was unfairly prejudicial, we may consider prejudice in determining whether the court's error was harmless. *See* M.R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."); *see also* M.R. Civ. P. 61; *Banks v. Leary*, 2019 ME 89, ¶ 19, 209 A.3d 109.

The entry is:

> Judgment vacated. Remand for further proceedings consistent with this opinion.

_____

Christopher S. Berryment, Esq., Mexico, for appellant Charles D. Needham

Teresa Needham, appellant pro se

Rumford District Court docket number FM-2019-107