MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2015 ME 58
Docket:       Som-14-341
Argued:       April 8, 2015
Decided:      May 7, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

JANA GEHRKE et al.

v.

CHAD GEHRKE

SAUFLEY, C.J.

[¶1]  Following a pattern of violence, threats, suicide threats, and failure to comply with increasingly restrictive court orders, Chad Gehrke appeals from a judgment entered in the District Court (Skowhegan, *Benson, J.*) extending a protection from abuse order protecting his ex-wife, Jana Gehrke, and the parties' three sons for an additional two years.  He argues that the court erred in relying on evidence of conduct that occurred before the original protection from abuse order was entered in finding that the extended order was "necessary" to protect Jana and the children, and that the extended protection order violates his constitutional due process rights as a parent.   19-A M.R.S. § 4007(2) (2014).   We affirm the judgment.

# I.  BACKGROUND

## A.    Procedural History

[¶2]   In July 2012, Jana Gehrke filed a complaint against Chad Gehrke seeking protection from abuse for herself and their three sons (then ages twelve, nine, and seven).  The parties agreed to the entry of a protection order without findings of abuse, and the court (*Stanfill, J.*) entered an order on July 20, 2012.  The order authorized Chad to contact Jana only indirectly through identified individuals and only regarding the children, and it authorized contact with the children under the supervision of identified individuals, at counseling as recommended by professionals, and at the children's extracurricular school events.

[¶3]   Jana moved to modify the order in January 2013, seeking to add a requirement that Chad attend counseling, Menswork, or an anger management program.  The resulting order, entered by agreement without findings of abuse on February 22, 2013, required Chad to obtain such services and authorized him to send text messages to Jana but only regarding the children.

[¶4]  Six months later, in late August 2013, Jana again moved to modify the order, this time on the ground that Chad had engaged in conduct that had frightened the children.  The court's resulting order, entered on September 13, 2013, again by agreement of the parties without findings of abuse, further

constrained Chad's contact with the children and eliminated the provision that Chad could contact Jana indirectly through others or by sending text messages.

[¶5] On November 1, 2013, Jana filed her third motion to modify the protection order, seeking a complete prohibition on contact between Chad and the children. After a full, contested hearing, the court found that Chad had committed abuse and entered an amended order on January 3, 2014, prohibiting Chad from having any contact with Jana or the children, including at school and sporting events attended by the children. That amended order was set to expire on July 20, 2014. Chad did not request further findings or appeal from the judgment.

[¶6] In mid-July 2014, Jana moved to extend the order of protection from abuse for two more years. *See* 19-A M.R.S. § 4007(2). She alleged that she remained in fear for herself and her children because Chad had repeatedly violated protection orders and had engaged in other conduct that frightened her and the children. The court (*Benson, J.*) held a contested hearing on July 18, 2014, during which it heard testimony from Jana and two of her relatives. The court advised Chad of his Fifth Amendment rights. Chad elected not to testify, and he offered no additional evidence.

[¶7] The court entered a judgment extending the order of protection from abuse due to an "ongoing pattern of abuse" that had "continued even through the existence of a previous order." The court stated, "based on the evidence that I've

4

heard, I feel I have no choice but to continue the current order for another two years."[1]

B.     Facts Supporting the Court's Judgment

[¶8]   Because Chad did not, after the court entered its judgment, "request additional findings of fact pursuant to M.R. Civ. P. 52, we assume that the trial court made all of the necessary subsidiary findings that can be supported by competent record evidence to support its decision." *Sullivan v. Doe*, 2014 ME 109, ¶ 19, 100 A.3d 171. The evidence supporting the court's decision is as follows.

[¶9]   Jana met Chad when she was twenty-two years old and already had two daughters, ages two and five. Chad had a four-year-old child but had only supervised contact with that child and was required to attend an anger management program. After Jana had been with Chad for about a year, he began to break and throw things, and to push her. When she was pregnant with one of their children, he made a threat through a friend that he was going to "take a coat hanger to [Jana] and deliver[] that baby dead."

[¶10]   Chad once tackled Jana's oldest daughter in a neighbor's yard, and in 2009, he hit one of their boys when the boy did not want to wear the shirt his mother had chosen. When one of Jana's daughters attempted to intercede, Chad hit

---

[1]   Although Chad argues that this statement by the court evidenced a misunderstanding on the part of the court that it lacked discretion, the court's words, viewed in context, can only be understood to indicate that the facts that the court found met the legal standard for extending the order of protection and were so compelling that a substantial extension was necessary to protect Jana and the boys.

her. Jana began to accommodate Chad's every request in an effort to prevent him from hurting her children. The parties' oldest son witnessed Chad's intrusive and humiliating actions in challenging Jana's fidelity. Chad threw a lit cigarette at Jana when her younger daughter and one of the boys were in the car. He pushed Jana down the stairs in front of the children. He went to Jana's workplace, which resulted in an emergency room visit for Jana and the loss of her job. He also went to the home of the children's maternal grandmother late at night to take the children, which led to his arrest.

[¶11] Significantly, Chad once told Jana, while holding a gun and in possession of knives, and in the presence of the boys, that he was going to end it all that night and she would never have to worry about him and the boys again. He told Jana he "had five bullets and [he was] going to end it all and it was going to be done." He made similar threats to kill them all many times.

[¶12] The children have been traumatized. The youngest, nine years old at the time of trial, could not sleep by himself because he was scared that someone would break into the house. All of the children feel guilty because of things that they witnessed Chad do to Jana. One of Jana's daughters dropped out of high school because things got so bad. The boys have been in counseling, and Jana thinks that it is too early to trust that Chad is doing what he must to make it safe for the children to see him. Chad often used his visitation with his children to try to

6

find out what Jana was doing, who Jana was talking to, who Jana was dating, and when Jana got out of work. He has repeatedly violated court orders, as demonstrated by a series of probation revocations and convictions entered upon guilty pleas for violating protective orders or conditions of release.[2]

[¶13] After his most recent release from jail in September 2013, Chad contacted Jana by email; blew her a kiss from across the street at a child's sporting event; showed up at a sporting event disguised in a wig, which upset the children because they thought that he might kidnap them; and asked a friend of Jana's if Chad could put his paycheck in the friend's mailbox to go toward child support.

[¶14] Chad now appeals from the trial court's extension of the order of protection from abuse. *See* 14 M.R.S. § 1901 (2014); M.R. App. P. 2.

## II. DISCUSSSION

[¶15] Chad's arguments concern (A) the court's consideration of evidence of abuse that predated the initial protection from abuse order in determining whether an extension of the order was necessary and (B) the constitutionality of the protection from abuse statute's infringement on his parental rights. We address each issue separately.

---

[2] Although not presented as exhibits at the hearing, copies of docket entries and judgments demonstrating probation revocations and convictions entered between 2010 and 2013 are contained in the record as a result of prior proceedings in the case, and Jana asked the court to take judicial notice of the probation revocations and convictions.

A. Evidence of Prior Abuse

[¶16] Chad argues that the court erred in relying on any evidence that predated the first protection order entered in this matter in 2012. He argues that the court erred in determining that an extended protection order was "necessary" to protect Jana and the children from abuse, 19-A M.R.S. § 4007(2), when there was little evidence of new conduct since the last modification of the order.

[¶17] "A protective order or approved consent agreement is for a fixed period not to exceed 2 years." *Id.* "At the expiration of that time, the court may extend an order, upon motion of the plaintiff, for such additional time as it determines necessary to protect the plaintiff or minor child from abuse." *Id.* "[A]n extension granted in response to a plaintiff's motion to extend is the exclusive means to extend a protection order beyond the two-year durational limit." *O'Brien v. Weber*, 2012 ME 98, ¶ 9, 48 A.3d 230.

[¶18] The findings required for an extension of an existing order of protection differ from the findings required for a court to issue a new order of protection. *See* 19-A M.R.S. §§ 4002(1), 4005(1), 4007(1), (2) (2014). Whereas a plaintiff bringing a new action must demonstrate "that the defendant has committed the alleged abuse or engaged in the alleged conduct described in section 4005, subsection 1," *id.* § 4007(1), a plaintiff seeking to extend an order must

8

demonstrate that the additional time is "necessary to protect the plaintiff or minor child from abuse," *id.* § 4007(2).

[¶19]   When a court's order of protection has expired, some new conduct meeting the definition of abuse must be shown for the court to issue a new order of protection.  *See O'Brien*, 2012 ME 98, ¶¶ 9-10, 48 A.3d 230.  By contrast, when a party, before an order of protection has expired, requests the *extension* of that order, a court can, and often will, base its determination in part on the underlying reasons that the initial order was entered.  *See, e.g.*, *Dyer v. Dyer*, 2010 ME 105, 5 A.3d 1049.  Evidence demonstrating a history of abuse, as defined by statute to include actual or attempted infliction of bodily injury or offensive physical contact, *see* 19-A M.R.S. § 4002(1)(A), and threats of such conduct made in an attempt to place another in fear of bodily injury, *see id.* § 4002(1)(B), is relevant and admissible to demonstrate that an extended order of protection is "necessary," *id.* § 4007(2).  In this context, a court's consideration of evidence of earlier abuse is appropriate, particularly when preceding orders were entered without the court making particularized factual findings or were entered by agreement of the parties without any finding of abuse.  *See Dyer*, 2010 ME 105, ¶¶ 3-5, 11, 5 A.3d 1049.

[¶20]   The matter before us stands as a vivid example of a case in which evidence of earlier abuse was essential to the court's understanding of whether an extension of the order was "necessary to protect the plaintiff or minor child from

abuse." 19-A M.R.S. § 4007(2). Without evidence of the pattern of persistent intrusive and frightening conduct when Chad was allowed access to Jana and the children, the court would not have been in a position to understand why Jana and the children would be frightened by Chad's more recent behavior.

[¶21]  Although the evidence of recent conduct might not, taken in isolation, demonstrate that new abuse occurred, *see* 19-A M.R.S. §§ 4002(1), 4007(1), the record contains ample evidence of a pattern of abuse by Chad supporting the court's conclusion that an extension of an existing order was necessary for Jana's and the boys' protection, *see* 19-A M.R.S. § 4007(2).  Specifically, the record contains evidence that Chad was violent with Jana and at least one of the boys in the past; that he threatened Jana, the children, and himself while in possession of deadly weapons; that he repeatedly violated protection orders; and that Jana and the children remain frightened of him, especially because he recently behaved in ways that continued the pattern of intimidating or threatening conduct.  Chad did not offer any evidence that the risk he posed to Jana and the children had diminished.

[¶22]  Brandishing weapons, threatening suicide, making graphic threats of violence, and persistently violating court orders all demonstrate a serious potential for lethality.  *See* 19-A M.R.S. § 4001(1) (recognizing that such conduct "frequently culminates in intrafamily homicide").  Given this evidentiary record,

the court did not err in finding that Chad's recent actions, viewed in context, demonstrate a continued threat of abuse, and that continued protection is necessary. *See id.*; *see also Walton v. Ireland*, 2014 ME 130, ¶ 22, 104 A.3d 883; *O'Brien*, 2012 ME 98, ¶ 9 & n.2, 48 A.3d 230.

B.      Constitutionality of Intrusion on Parental Rights

[¶23]  Chad argues that, to safeguard his constitutionally protected parental rights, any restructuring of his rights of contact with the boys should have been undertaken in the divorce proceeding, not through a protection from abuse complaint.   Accordingly, we must determine whether the order of extension entered here comported with the purposes of the protection from abuse statute in allocating "temporary parental rights and responsibilities" for purposes of protection from abuse.  19-A M.R.S. § 4007(1)(G); *see* 19-A M.R.S. § 4001 (2014) (identifying statutory purposes of protection from abuse statutes).

[¶24]  "The law is firmly established that parents have a fundamental liberty interest to direct the care, custody, and control of their children." *Griffin v. Griffin*, 2014 ME 70, ¶ 26, 92 A.3d 1144 (quotation marks omitted).  Consistent with this legal principle, we presume that fit parents act in the best interests of their children, and due process requires that any interference with parental interests pass the strict-scrutiny test. *Pitts v. Moore*, 2014 ME 59, ¶¶ 11-12, 90 A.3d 1169.  That test

"requires that the State's action be narrowly tailored to serve a compelling state interest." *Id.* ¶ 12 (quotation marks omitted).

[¶25]  The protection from abuse statutes permit a court, upon a finding of abuse, to temporarily infringe on parental discretion over the care and custody of a child. *See* 19-A M.R.S. § 4007(1)(G).  The Legislature authorized this interference in recognition of "domestic abuse as a serious crime against the individual and society, producing an unhealthy and dangerous family environment, resulting in a pattern of escalating abuse, including violence, that frequently culminates in intrafamily homicide and creating an atmosphere that is not conducive to healthy childhood development."  19-A M.R.S. § 4001(1); *see id.* § 4007(1).  The protection from abuse process serves to "support the efforts of law enforcement officers, prosecutors and judicial officers to provide immediate, effective assistance and protection for victims of abuse and to recognize the crucial role of law enforcement officers in preventing further incidents of abuse and in assisting the victims of abuse." *Id.* § 4001(4).[3]

[¶26]  When a party has established abuse pursuant to the statutory definition of that term, *see id.* § 4002(1), the State has a "compelling interest" in limiting or restricting a parent's rights, because harm or a threat of harm to the

---

[3]  *See generally* Maine Domestic Abuse Homicide Review Panel, 10th Report, *Building Bridges Towards Safety and Accountability to End Domestic Violence Homicide* (April 2014).

child will result from the absence of such governmental interference. *Sparks v. Sparks*, 2013 ME 41, ¶¶ 21-22, 65 A.3d 1223. As we have held before, the statute survives strict scrutiny because it is narrowly tailored to authorize relief only when the person bringing the petition is a person who is responsible for the child, there has been a finding of abuse as that term is specifically defined by statute, and the rights awarded are temporary. *See id.* ¶¶ 23-26.

[¶27] Here, based on findings reached after a full evidentiary hearing, the court ordered an extension of two years. Although the order results in an intrusion on Chad's parental rights, both the statutory scheme and the particular order entered here are narrowly tailored to serve the State's interest of protecting children from abuse and harm. The extended order is not final but instead modifiable if the circumstances change, and unlike a parental rights and responsibilities judgment, *see* 19-A M.R.S. § 1653 (2014), the provisions of the order are limited in duration, here to two additional years, and are enforceable by law enforcement, *see* 19-A M.R.S. § 4011 (2014), which is necessary in a case where threats of lethal conduct have been made in the presence of firearms. Chad has not been deprived of due process by the application of section 4007(2) of the protection from abuse statute in these circumstances.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Walter F. McKee, Esq., and James A. Billings, Esq., McKee Billings, LLC, P.A., Augusta, for appellant Chad Gehrke

Paul Sumberg, Esq., Wright & Mills, P.A., Skowhegan, for appellee Jana Gehrke

**At oral argument:**

James A. Billings, Esq., for appellant Chad Gehrke

Lawrence Bloom, Esq., Bloom & Bloom, Skowhegan, for appellee Jana Gehrke

Skowhegan District Court docket number PA-2012-271
**FOR CLERK REFERENCE ONLY**