MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions

Decision:      2017 ME 48
Docket:        Cum-15-345
Argued:        April 5, 2016
Decided:       March 16, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.


PETITION OF EDWIN R. JONAS III FOR REINSTATEMENT
TO THE BAR OF THE STATE OF MAINE


SAUFLEY, C.J.

[¶1]  In 2013, Edwin R. Jonas III, who had been admitted to the Maine Bar in 1987, petitioned for reinstatement to the bar from his administrative suspension for failing to register in 1995.  A single justice of the Maine Supreme Judicial Court (*Gorman, J.*) ultimately denied Jonas's petition for reinstatement. Jonas now appeals to us, in our capacity as the Law Court,[1] challenging the processes employed by the Grievance Commission, the Board of Overseers of the Bar, and the single justice in reviewing his petition for reinstatement.  Jonas also challenges the single justice's evidentiary rulings during the de novo hearing on his petition, and the Board's and the single justice's conclusion that he failed to meet his burden to show that he was eligible for reinstatement.

---

[1] We treat the single justice's decision on the petition for reinstatement as the judgment of a trial court and review as an appellate body.  *See* 4 M.R.S. § 57 (2016); *In re Williams*, 2010 ME 121, ¶ 1, 8 A.3d 666; *In re Application of Feingold*, 296 A.2d 492, 496 (Me. 1972).

2

[¶2] The record reflects that Jonas has engaged in more than two decades of litigation with his ex-wife during which he was suspended from the bars of three states, jailed for contempt, declared a vexatious litigant, and admonished by a federal court for making frivolous arguments. We affirm the single justice's judgment declining to reinstate Jonas to the Maine Bar.

## I. BACKGROUND

### A. Facts

[¶3] The single justice's factual findings, reported here, are supported by witness testimony, the parties' exhibits, and findings and judgments contained in the decisions of other courts and disciplinary bodies before whom Jonas was a party. Preliminarily, we note that this matter is complicated by the fact that, following the completion of the proceedings, the applicable Maine Bar Rules were repealed and replaced in their entirety with rules that substantially changed the procedures for reinstatement since Jonas's petition was filed.[2] *See generally* M. Bar R. (Tower 2015) (effective July 1, 2015). Except as otherwise indicated, all references to the Maine Bar Rules are to the rules that were in effect at the time of Jonas's petition. *See generally* M. Bar R. (Tower 2014).

---

[2] The Maine Bar Rules govern proceedings for attorney discipline and reinstatement, which are initiated with the Board of Overseers of the Bar. *See* M. Bar R. (Tower 2014). Proceedings for the admission of new attorneys to the bar are initiated with the Board of Bar Examiners and governed by the Maine Bar Admission Rules, which have not materially changed since Jonas filed his petition.

[¶4]  Jonas was admitted to the Maine Bar in 1987.  Because of his failure to complete an annual registration, *see* M. Bar R. 6(b)(1), he was administratively suspended from the Maine Bar in 1995.

[¶5]  In 1990, Jonas and his wife, Linda Jonas, were divorced.  Since then, Jonas and Linda have been involved in highly contentious post-divorce litigation.  In 1995, while the parties were litigating competing post-judgment motions, Linda alleged that Jonas was secretly liquidating assets and hiding the proceeds in accounts in the Cayman Islands, and that he planned to move there with the couple's children.  The New Jersey Superior Court ordered Jonas not to transfer any assets valued over $15,000 and not to remove the children from a five-state area.

[¶6]  In direct violation of the court's order, Jonas obtained a loan of $130,000 secured by a mortgage on his residence and continued efforts to sell commercial property that he rented out as a 7-Eleven building, eventually deeding the store to his sister and a friend to be held in trust for the children.  In addition, Jonas secretly kept $438,000 in a bank account in the Cayman Islands, and on September 15, 1995, he absconded with his children to the Cayman Islands, where he enrolled them in school.

4

[¶7]  After Jonas failed to appear at a hearing, the court issued a warrant for Jonas's arrest, placed the children in Linda's custody, and took a number of protective measures designed to ensure that Jonas complied with his financial obligations imposed by previous court orders.  Jonas continued to defy the court's orders regarding the payment of his support obligations.  Shortly thereafter, Jonas was briefly incarcerated for contempt of court.  The New Jersey Appellate Division upheld the series of actions taken by the trial court, stating, "As evidenced by the record, [Jonas] time and again failed to abide by the court's orders and deliberately avoided paying alimony and other support to the plaintiff."

[¶8]  As a result of his actions, the New Jersey State Bar suspended Jonas for a period of six months beginning on September 2, 2005, for conduct intended to disrupt a tribunal and conduct that was prejudicial to the administration of justice.  Jonas has not been reinstated in New Jersey.

[¶9]  In 2006, Jonas was reciprocally suspended from the bar of Pennsylvania for a period of six months based on the discipline imposed in New Jersey.  Jonas was reinstated to inactive status in Pennsylvania in 2014.  In 2007, Jonas was reciprocally suspended from the Florida bar for a period of one year for committing conduct intended to disrupt a tribunal.

[¶10]  After his suspension from the New Jersey bar, Jonas's post-divorce proceedings in New Jersey continued.  Jonas failed to attend multiple hearings during these proceedings.  Based on Jonas's "obstinate refusal to comply or properly respond to court orders," the Appellate Division dismissed an appeal from Jonas, stating, "[Jonas's] defiance is especially egregious in light of the fact that he was an attorney-at-law of this State and was suspended in this state and others for his willful evasion of court orders."

[¶11]  At some point prior to 2009, Jonas moved to Montana. When Linda sought to domesticate the New Jersey judgments in Montana, Jonas unsuccessfully launched a collateral attack on the judgments.  The court granted Linda's motion to declare Jonas a vexatious litigant and found that in attempting to defy the New Jersey judgments, Jonas had willfully abused his litigation skills by filing "harassing, duplicative, vexatious, and frivolous" lawsuits, had filed appeals in matters in which he had "no objective good faith expectation of prevailing," and had caused "needless expense and burden" to Linda.

[¶12]  During litigation that Jonas instituted in the United States District Court for the District of Montana against Linda, her Montana attorney, and others, Jonas was ordered to show cause why he should not be sanctioned

6

pursuant to Rule 11 of the Federal Rules of Civil Procedure for making frivolous arguments. After Jonas failed to show good cause, the court issued a sanction in the form of an admonishment dated August 7, 2014. A copy of its admonishment was forwarded to the state bars of Maine, New Jersey, and Pennsylvania. By the time the admonishment was forwarded to the Maine Bar, Jonas's reinstatement proceedings were already pending before the Maine Board of Overseers of the Bar.

B.     Procedural History of Jonas's Petition for Reinstatement in Maine

[¶13]  On September 20, 2013, Jonas filed a petition for reinstatement to the Maine Bar with the Supreme Judicial Court and the Board of Overseers of the Bar. The matter was assigned to a single justice of the Supreme Judicial Court. Bar Counsel opposed the petition. On March 4, 2014, the Grievance Commission held a hearing concerning the petition for reinstatement. The Commission recommended to the Board that Jonas be conditionally reinstated to the bar. Both Jonas and Bar Counsel objected to some aspect of the Grievance Commission's recommendations. In response, the Board created a "Special Panel" of the Board to review the evidence adduced at the Commission's hearing, seek additional written arguments from the parties, and make a

recommendation to the Board as a whole as to whether the Board should recommend Jonas's reinstatement.

[¶14] Once the Special Panel completed its work, the full Board met.[3] The Board found that Jonas did not meet his burden to establish that he should be reinstated. The Board concluded that the Grievance Commission had failed to consider the necessary factors in determining whether to recommend reinstatement. On September 24, 2014, the Board recommended to the single justice that Jonas's petition for reinstatement be denied.

[¶15] After briefing and argument on several procedural issues, the single justice scheduled a de novo hearing on Jonas's petition in which the court provided the parties an opportunity to present all relevant evidence and make a record that was to be "created anew."

[¶16] Prior to the hearing, Jonas filed a motion in limine seeking to exclude evidence of any issues regarding Jonas's conduct that were not raised in the hearing before the Grievance Commission. The single justice denied the motion, noting that Jonas had the burden to prove that he was eligible for reinstatement by clear and convincing evidence, and concluding that "[d]ue process does not require that the Board notify Mr. Jonas of those aspects of his

---

[3] The record does not contain a report or other written record of the recommendation of the Special Panel to the full Board.

8

burden that it anticipates challenging at the hearing, nor does due process limit the Board from challenging any aspect of Mr. Jonas's presentation."

[¶17] A two-day bench trial was held on April 27 and 28, 2015. At the trial, Jonas objected to the admission of prior court orders and decisions in cases that involved him. The single justice overruled Jonas's objections, admitted the few orders and decisions ultimately offered by Jonas, and admitted the many orders and decisions offered by the Board.

[¶18] On June 22, 2015, the single justice issued a judgment finding that Jonas had failed to establish by clear and convincing evidence that he was eligible for reinstatement. *See* M. Bar. R. 7.3(j)(5). In reaching this conclusion, the single justice "considered the testimony of witnesses presented during the de novo hearing in April, the documents admitted in evidence at that hearing, the findings and conclusions made by various courts in prior proceedings in which Jonas was a party, and the parties' arguments." The judgment also indicated, "some of the cases [relied upon] were specifically provided by the parties at hearing, and others were found in electronic databases that are publicly available."

[¶19] This appeal followed. *See* 4 M.R.S. § 57 (2016); *In re Application of Feingold*, 296 A.2d 492, 496 (Me. 1972).

## II. DISCUSSION

[¶20] We begin by reviewing the procedures and standards that applied to Jonas's petition for reinstatement. In doing so, we interpret the meaning of the Maine Bar Rules de novo, looking both to the plain language and to the purpose of the rules. *See Bailey v. Bd. of Bar Exam'rs*, 2014 ME 58, ¶¶ 16, 19-21, 90 A.3d 1137; *Bd. of Overseers of the Bar v. Warren*, 2011 ME 124, ¶ 25, 34 A.3d 1103. As we cautioned at the outset, many of the rules applicable here have been superseded by the Bar Rules that went into effect in 2015.

### A. Reinstatement Procedures

[¶21] Pursuant to the bar rules that applied to Jonas's petition, "[a]n attorney who ha[d] been suspended for non-disciplinary reasons" could "petition to the Court for reinstatement." M. Bar. R. 7.3(j)(4). If Bar Counsel opposed the petition, the matter would "be immediately referred to the Grievance Commission" for a hearing. M. Bar R. 7.3(j)(5). During the hearing, it was the petitioner's burden to

> present[] clear and convincing evidence demonstrating the moral qualifications, competency, and learning in law required for admission to practice law in this State[,] . . . [and] that it [wa]s likely that reinstatement w[ould] not be detrimental to the integrity and standing of the Bar, the administration of justice, or to the public interest. Factors to be considered as to the petitioner's meeting that burden include[d] evidence that:

(A) The petitioner ha[d] fully complied with the terms of all prior disciplinary orders;

(B) The petitioner ha[d] neither engaged not attempted to engage in the unauthorized practice of law;

(C) The petitioner recognize[d] the wrongfulness and seriousness of the misconduct;

(D) The petitioner ha[d] not engaged in any other professional misconduct since resignation, suspension or disbarment;

(E) The petitioner ha[d] the requisite honesty and integrity to practice law; and

(F) The petitioner ha[d] met the continuing legal education requirements . . . .

M. Bar R. 7.3(j)(5).

[¶22] After a hearing, the Grievance Commission would "transmit to the Board and to the petitioner its findings and recommendations by written report, and provide the Board with any record it ha[d] made." M. Bar R. 7.3(j)(6). "After consideration of a party's timely objection to the [Grievance Commission's] report the Board [would] file its recommendations and findings with the Court, together with any record that ha[d] been made." *Id.* After the Board filed its recommendation and findings, the Supreme Judicial Court would, "with or without hearing, grant or deny the petition for reinstatement by written order." *Id.*

B. Standard of Evidentiary Admissibility

[¶23] Although the Bar Rules provided standards of evidentiary admissibility that applied to disciplinary proceedings, *see* M. Bar R. 7.1(e)(2)(C), 7.2(b)(2), they did not expressly address the standards that would apply in reinstatement proceedings, *see* M. Bar R. 7.3(j).[4] Because attorneys may petition for reinstatement from either disciplinary or nondisciplinary suspensions, the same standards of evidentiary admissibility that applied to disciplinary proceedings did not necessarily apply to all petitions for reinstatement. Accordingly, we must first determine whether the Rules of Evidence or the "reasonable person" standard, which applied in disciplinary proceedings before a Grievance Panel, M. Bar R. 7.1(e)(2)(C), and in attorney admission proceedings, M. Bar Admission R. 9(d)(5)(C), 9(d)(6)(C), applied to the trial held by the single justice. *See also* 5 M.R.S. § 9057(2) (2016).

[¶24] We begin by reviewing the standard that applies to attorney admission proceedings. If the Board of Bar Examiners holds a hearing on an application for admission to the bar, "[e]vidence shall be admitted . . . if it is the

---

[4] Similarly, the new Rules do not explicitly provide an evidentiary standard for reinstatement proceedings before the Commission. *See* M. Bar R. 29(g) (Tower 2015); *see also id.* 14(a)(1)-(2) (providing that the Rules of Evidence do not apply to *disciplinary* hearings before a Grievance Commission Panel). We note, without deciding, that the new Rules appear to indicate that when the Court holds a hearing on the Commission's findings and recommendations in reinstatement proceedings, the Rules of Evidence apply. *See id.* 14(b)(1); 29(h).

kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs."   M. Bar Admission R. 9(d)(5)(C).   In such proceedings, the new applicant has the burden to prove that the applicant is "a person of good character," is "fit to practice law," and "possesses sufficient learning in the law to practice as an attorney in this State."  M. Bar Admission R. 8-10.

[¶25]   If an applicant is denied a certification of good character and fitness to practice law by the Board, the applicant may petition the Court for admission pursuant to Rule 9(d)(6)(A).  A single justice of this Court will then conduct a de novo hearing during which the same reasonable person standard of evidentiary admissibility applies.  M. Bar Admission R. 9(d)(6)(C).

[¶26]   Under the rules applicable to these proceedings, when a suspended attorney petitioned for reinstatement to the bar, the process and the petitioner's burden were much the same as for an initial application, although the applicable evidentiary standards were not explicitly addressed in the rules.[5] Again, the petitioner was the moving party, not the Board of Overseers of the

---

[5] As we noted, the Bar Rules provided standards of evidentiary admissibility only for disciplinary proceedings.   In disciplinary proceedings, the Bar Rules provided that hearings before the Commission were subject to the reasonable person standard of admissibility, whereas hearings before a single justice were subject to the Rules of Evidence, "[t]o the extent appropriate."  *See* M. Bar R. 7.1(e)(2)(C), 7.2(b)(2).

Bar. Because the procedural posture, allocation of burdens, and ultimate consequences of reinstatement proceedings mirrored bar admission proceedings, we conclude that the reasonable person standard of evidentiary admissibility applied to reinstatement proceedings before the Commission and the Board. *See* M. Bar R. 7.3(j)(5) (providing that a petitioner seeking reinstatement had the burden to show "the moral qualifications, competency, and learning in law *required for admission to practice law* in this State" (emphasis added)).

[¶27] In a single justice hearing on a reinstatement petition in which the court, as anticipated by the Rule, did not provide the petitioner with the opportunity for a full de novo factual presentation, the single justice's determination would be made based on a review of the record as it was "developed before the Commission and the Board."[6] *See In re Williams*, 2010 ME 121, ¶ 8, 8 A.3d 666. Thus, the single justice's determination could have been based entirely on the record provided by the Board, and that record would have been created, as we have just held, utilizing the reasonable person admissibility standard rather than the Rules of Evidence.

---

[6] Although we have previously held to the contrary, *see, e.g.*, *In re Application of Spurling*, 595 A.2d 1062, 1065 (Me. 1991), the cases in which we did so involved bar admission rules that have been superseded.

14

[¶28]   Because here the single justice took the additional step of providing Jonas with a complete de novo factual hearing instead of engaging in a "de novo" review of the record, we must determine what standard of evidentiary admissibility applied during Jonas's de novo reinstatement hearing. We conclude that the fact that the single justice provided Jonas a fully de novo reinstatement hearing does not alter the *kind* of evidence upon which the reinstatement determination may be made.  Thus, the admission of evidence in that proceeding was governed by the same reasonable person standard that applied before the Commission and the Board, and that applies to administrative proceedings and to attorney admission proceedings before a single justice.  The Rules of Evidence did not apply.[7]

C.   Review of Jonas's Arguments

[¶29]   Having clarified the nature of the reinstatement proceeding and the standard for the admissibility of evidence, we turn to Jonas's arguments on appeal.   Among his many arguments, Jonas challenges (1) the processes

---

[7] The new Bar Rules explicitly subsume reinstatement from an administrative suspension longer than five years within the same process as is used for reinstatement from a disciplinary suspension longer than six months.  *See* M. Bar R. 4(i), 29 (Tower 2015).  The new rules also provide different criteria for reinstatement that have a greater disciplinary focus and are less similar to the criteria applicable to attorney admissions. *See id.* 29(e).  For example, to be reinstated, a petitioner no longer has the burden to show the "moral qualifications, competency, and learning in law required for admission." *Compare* M. Bar R. 7.3(j)(5) (Tower 2014) *with* M. Bar R. 29(e) (Tower 2015).  As noted, we do not opine on the standard of evidentiary admissibility that applies pursuant to the new Bar Rules.

employed by the Commission, the Board, and the single justice in reviewing his petition for reinstatement; (2) evidentiary rulings made during the de novo hearing of his petition; and (3) the Board's and single justice's conclusion that he failed to meet his burden to show that he was eligible for reinstatement to the Maine Bar. We discuss each argument in turn.

1. Procedural Issues

a. Special Panel

[¶30] Jonas first challenges the Board's establishment of a "Special Panel" of the Board to review the Commission's recommendation to reinstate Jonas to the Maine Bar as a violation of the Bar Rules and his due process rights.

[¶31] After the Board receives the recommendations and findings of the Commission on a petition for reinstatement, "the Board . . . retains the ultimate responsibility for evaluating such recommendations and findings and making its own findings and recommendations to the Court." Me. Bd. of Overseers of the Bar Reg. No. 50, 1 *Maine Manual on Professional Responsibility* R-30 (2004). If the petitioner or Bar Counsel objects, "the Board will . . . decide . . . what, if any, procedure to establish for hearing the objections to the findings and recommendations of the Commission or Panel." *Id.* at R-30 to R-31. Thus, although the regulation does not explicitly mention the creation of a "Special

16

Panel," it requires the Board to make independent recommendations and findings and gives the Board broad discretion to adopt an appropriate procedure to consider objections to the Commission's report.

[¶32] Turning to the purpose of the rules, we have previously noted that, although the Court itself retains ultimate authority to regulate attorneys and the practice of law in Maine, it has delegated some of that authority to the Board of Overseers "to develop a record and issue recommendations in reinstatement proceedings." *In re Williams*, 2010 ME 121, ¶ 5, 8 A.3d 666. The creation of a Special Panel of the Board to review the Grievance Commission's findings and seek additional input from the parties is consistent with this purpose.

[¶33] Based on the language of the applicable Bar Rules and Board Regulations and the purpose and role of the Board, it was neither inappropriate nor a violation of Jonas's due process rights for the Board to appoint a "Special Panel" of the Board to review the Grievance Commission's recommendation and make its own recommendation to the full Board.[8]

---

[8] Moreover, Jonas's objections to the Board's processes have been rendered moot by the single justice's decision to conduct a hearing during which Jonas and the Board were given the opportunity to present their evidence anew.

b.     Reinstatement Factors

[¶34]  Jonas next argues that because he was seeking reinstatement after an administrative suspension, M. Bar R. 7.3(j)(4), the factors listed in M. Bar R. 7.3(j)(5) did not apply to his petition.  That argument is simply incorrect.

[¶35]  The procedure set out in 7.3(j)(5) applied to all types of petitions for reinstatement mentioned in section 7.3(j).  *See Bailey*, 2014 ME 58, ¶¶ 16-17, 90 A.3d 1137; *In re Williams*, 2010 ME 121, ¶ 6, 8 A.3d 666.  This does not mean that each factor would have similar weight in every case; rather, the factors would be considered to the extent that they applied to the petitioner. The Board and single justice appropriately applied the factors to determine whether Jonas had met his burden to demonstrate eligibility for reinstatement.

c.     Due Process

[¶36]  In addition to his argument that the procedures violated the Bar rules, Jonas argues that the procedures collectively violated his due process rights.  We review alleged procedural due process violations de novo.  *See State v. Jones*, 2012 ME 126, ¶ 35, 55 A.3d 432.

[¶37]  We have previously held that due process in the context of bar proceedings "consists of notice of the proceedings and an opportunity to be

18

heard, including the right to confront and cross-examine witnesses." *See In re Williams*, 2010 ME 121, ¶ 5, 8 A.3d 666.

[¶38]  Jonas had both notice and the opportunity to be heard at every stage of the proceedings.  First, he had notice and the opportunity to present his petition to the Grievance Commission.  After the Grievance Commission—and then the Board—issued recommendations, the single justice invited the parties to address the process employed by the Grievance Commission and the Board, where Jonas had the opportunity to brief and argue the procedural issues. Jonas was then provided a full de novo hearing before the single justice.[9] Before holding a hearing, the single justice allowed Jonas to file motions in limine and heard his evidentiary arguments.  At the hearing, Jonas was again given the opportunity to present witnesses and documentary evidence, and to address the evidence offered by the Board.  At each stage of the proceedings, Jonas was represented by capable counsel.  Jonas was not deprived of due process at any stage of the proceedings.  *See In re Williams*, 2010 ME 121, ¶¶ 5-9, 8 A.3d 666.

---

[9] Neither party contests the propriety of the single justice holding a de novo hearing in this matter.

2.      Evidentiary Issues

[¶39]  Jonas next argues that the single justice erroneously took judicial notice of the facts found in judgments from other jurisdictions in which Jonas's conduct was assessed.  *See* M.R. Evid. 201.  We review evidentiary rulings for clear error or abuse of discretion.  *State v. Dolloff*, 2012 ME 130, ¶ 24, 58 A.3d 1032.

[¶40]  As we have concluded, the Rules of Evidence did not apply in these proceedings.  Bar reinstatement proceedings required the single justice to determine, inter alia, that the petitioner was of good moral character, and that reinstatement would not be detrimental to the integrity and standing of the Bar.  *See* M. Bar R. 7.3(j)(5).  In such a proceeding, the single justice was bound to consider the petitioner's *conduct as an attorney and litigant* in determining whether the petitioner was eligible for reinstatement.  Judgments and orders relating to prior litigation involving that attorney are uniquely relevant to that determination.  Thus, pursuant to the reasonable person standard of admissibility, the single justice did not err or abuse her discretion in considering the extensive history of judgments and orders against Jonas.  *Cf.* M. Bar R. 7.3(h)(4) ("A final adjudication in another jurisdiction that an attorney had been guilty of misconduct may be treated as establishing the misconduct

for purposes of a disciplinary proceeding in this State."). Furthermore, as a litigant in family matters and as an attorney facing potential discipline, Jonas had the motivation and formal opportunity to offer evidence and argument. Because of the process afforded in the prior proceedings and the nature of the proceedings before the single justice, the facts found in the judgments that were relied on by the single justice constituted the kind of information upon which a reasonable person would rely. The single justice did not err or abuse her discretion in considering the judgments involving Jonas, including the factual findings contained in those judgments.[10]

---

[10] Because the parties spent considerable energy addressing the use of judicial notice in this matter, we briefly address the issue, despite its inapplicability to the proceedings before the single justice. During a trial in which the Rules of Evidence apply, courts may "judicially notice," and thereby conclusively establish, facts that are "not subject to reasonable dispute because [they] . . . [c]an be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." M.R. Evid. 201(b), (f). When a court takes judicial notice of a final judgment, from a Maine court or another court of competent jurisdiction, however, that "notice" is limited to the existence of the judgment, and the action of the court. "[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *see, e.g.*, *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70-71 (2d Cir. 1998); *United States v. Garland*, 991 F.2d 328, 332 (6th Cir. 1993); *Colonial Leasing Co. v. Logistics Control Group Int'l*, 762 F.2d 454, 459 (5th Cir. 1985); *see also* Field & Murray, *Maine Evidence* § 201.3 at 57 (6th ed. 2007) ("A court will take judicial notice [pursuant to M.R. Evid. 201(b)(2)] of pleadings, dockets, and other records of that court in the same or in other lawsuits.").

Contrary to the Board's argument here, the *factual findings* contained within a judgment are not appropriate subjects for judicial notice. As the Eleventh Circuit explained, "If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous." *Jones*, 29 F.3d at 1553. The collateral estoppel doctrine, also known as issue preclusion, "prevents a party from relitigating factual issues already decided if the identical issue necessarily was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in the prior proceeding." *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 16, 8 A.3d 677 (quotation marks omitted). In the matter before us, however, the Board did not assert the applicability of collateral

### 3.    Jonas's Burden

[¶41]  To be reinstated, Jonas was required to demonstrate, by clear and convincing evidence, that he possessed the moral qualifications, competency, and learning in law required for admission to practice law in this State, as well as to demonstrate, by clear and convincing evidence, that it was likely that reinstatement would not be detrimental to the integrity and standing of the Bar, the administration of justice, or the public interest.  M. Bar R. 7.3(j)(5).  We review a single justice's factual findings for clear error.  *Bailey*, 2014 ME 58, ¶ 16, 90 A.3d 1137.  Because Jonas had the burden of proof, he can prevail only if he can establish that the single justice was "compelled to find in his favor." *See In re Williams*, 2010 ME 121, ¶ 10, 8 A.3d 666.

[¶42]  Jonas argued that any misconduct that he committed leading to his New Jersey suspension was part of his personal life and should not be dispositive as to his moral character as an attorney.  He continued to deny responsibility for many of his actions.  For example, he asserted that his decision to abscond with his children in direct violation of the court's order was

---

estoppel.  *See Conary v. Perkins*, 464 A.2d 972, 975-76 (Me. 1983); *Reed v. Tracy*, 435 A.2d 745, 746 (Me. 1981).

Because the court, here, could rely on findings in other jurisdictions' judgments pursuant to the reasonable person standard of evidentiary admissibility, we need not determine whether collateral estoppel would have applied in this case had the Board argued its applicability.

not premeditated, and that the New Jersey courts, his former wife, and her attorney were biased and had formed a conspiracy against him. The single justice found that these explanations were not credible.

[¶43] Furthermore, the Board offered ample evidence, upon which the single justice could rely, to rebut Jonas's contention that he has behaved ethically since his suspension from the New Jersey bar in 2005. Specifically, the evidence showed that Jonas has demonstrated a pattern of disrespect and contempt for every level of the court system over many years, and in so doing he has abused the very litigation skills that he now seeks to use in Maine.

[¶44] Based on the above evidence, the single justice did not err in finding that Jonas failed to meet his burden of proving, by clear and convincing evidence, that he recognizes the wrongfulness and seriousness of his misconduct, M. Bar R. 7.3(j)(5)(C), or that he has the requisite honesty and integrity to practice law, M. Bar R. 7.3(j)(5)(E). The single justice was not compelled to find that Jonas possesses the moral qualifications, competency, and learning in law required for admission to practice law in this State, and that it is likely that reinstatement will not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest. *See* M. Bar R. 7.3(j)(5); *Bailey*, 2014 ME 58, ¶ 57, 90 A.3d 1137. Jonas's proven

willingness to abuse his law license and legal skills, disrespecting multiple tribunals and the truth, left the single justice little choice in this matter.

## III. CONCLUSION

[¶45] The procedures employed at each stage of the proceedings in this case complied with the Bar Rules and provided Jonas with extensive due process. Jonas was provided ample notice and opportunity to present his case at each level of the proceedings. There was no error in the single justice's consideration of the multitude of judgments and orders against Jonas. Over more than two decades, Jonas incessantly abused his legal skills by initiating a litany of frivolous, vexatious, and harassing litigation, and has shown unremitting contempt for the legal system by continually and repeatedly ignoring court orders.

[¶46] As the single justice found at the conclusion of the forty-four page judgment,

> When an attorney is admitted to the Maine bar, he swears that he "will not wittingly or willingly promote or sue any false, groundless or unlawful suit nor give aid or consent to the same" and that he "will delay no man for lucre or malice." 4 M.R.S. § 806 (2014). Jonas has demonstrated just the opposite.

[¶47] The single justice was not compelled to find that Jonas had demonstrated his eligibility for readmission to the Maine Bar.

The entry is:

Judgment affirmed.

---

James M. Bowie, Esq. (orally), Thompson & Bowie, LLP, Portland, for appellant Edwin R. Jonas III

Aria Eee, Esq. (orally), Board of Overseers of the Bar, Augusta, for appellee Board of Overseers of the Bar

Maine Supreme Judicial Court docket number Bar-13-16
FOR CLERK REFERENCE ONLY