MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 89
Docket:      Yor-18-287
Argued:      February 5, 2019
Decided:     June 6, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


KATHY J. BANKS

v.

PATRICK R. LEARY


HJELM, J.

[¶1]  Patrick R. Leary appeals from an order issued by the District Court (Biddeford, *Moskowitz, J.*) modifying certain provisions of the parties' divorce judgment relating to parental rights and responsibilities.  Leary contends that the court erred by admitting in evidence a report submitted by the guardian ad litem after the court had excused the GAL from being present during the hearing, which prevented Leary from cross-examining the GAL about her report.  Because any judicial error was harmless, we affirm the judgment.

## I.  BACKGROUND

[¶2]  Viewed in the light most favorable to the court's judgment, the record supports the following facts.  *See McBride v. Worth*, 2018 ME 54, ¶ 2, 184 A.3d 14.

[¶3]   Leary and Kathy J. Banks, who are the parents of a child, were divorced in July of 2017 pursuant to an agreed-to judgment (*Adamson, M.*). Pursuant to the judgment, the parties would both continue to live in the marital residence with their child, and they would have shared parental rights and responsibilities.  Subsequently, in the fall of 2017, the child engaged in some conduct that raised significant concerns about his safety.  Because of Leary's insensitive and inappropriate reaction to that situation, Banks moved out of the residence, taking the child with her.

[¶4]  By January of 2018, a number of post-judgment motions had been filed, most by Leary.  Through some of the motions, each party sought to modify the provisions of the divorce judgment affecting parental rights and responsibilities, including the child's primary residence, rights of parent-child contact, and child support.  By agreement, the court (*Najarian, M.*) issued an expanded-authority order, *see* M.R.G.A.L. 4(b)(4)(D)(iii), appointing a GAL for the minor child.  *See* 19-A M.R.S. § 1507(1) (2018); M.R. Civ. P. 107(a)(2). Among other things, the order required the GAL to "appear at all court events in this matter unless excused by the court."  Several months later, on Leary's motion, the court (*Foster, J.*) amended the appointment order by adding a

provision that required the GAL to submit a recommendation regarding a proposed evaluation of the child.

[¶5] On May 16, 2018, pursuant to the amended appointment, the GAL filed her written report, which summarized interviews she conducted and records she reviewed during her investigation, including the medical and mental health records of the parties and the child. In her report, the GAL recommended that the child live primarily with Banks and that Banks be granted sole decision-making authority regarding some aspects of the child's life. Approximately one week later, the parties filed witness and exhibit lists. Leary did not, in that first filing, identify the GAL report as a prospective exhibit or the GAL as a witness he might call. In an amended witness list, however, he identified the GAL report as a prospective exhibit and generically reserved the right to call any witness included on Banks's list, which did include the GAL.

[¶6] Two weeks after the GAL filed her report with the court, on May 30, 2018, the court (*Moskowitz, J.*) held a contested hearing on the pending motions. Both parties appeared; Banks was with counsel, and Leary was unrepresented. The GAL was also present at the beginning of the hearing but requested to be excused. Banks stated that she had no objection, but Leary did object, leading to the following colloquy with the court:

4

Court:  Okay.  And what's the objection based upon?

Leary:  The objection is as I intend to challenge the guardian ad litem's report and the facts.

Court: Okay.  Well, there are various ways you can do that but this is an issue regarding whether or not the guardian is required to stay at trial, and the guardian points out that the orders with respect to her appointment indicate that she is not to participate at trial.  The orders govern how the guardian participates.

Leary:  Well, how will I be able to challenge the findings that I --

Court:  Well, that's up to you.

Leary:  Okay.

Court:  And you've elected to represent yourself, and that's something that you would have to decide how you do that.  And I can't provide any guidance or assistance --

Leary:  Right.

Court:  -- to you in that regard, and I'll go over that a little more in detail in a moment.

The court was incorrect when it stated that the GAL was not required to attend

court hearings[1] because, as is noted above, *see supra* ¶ 4, the order appointing

---

[1]  The court was also incorrect when it initially stated that it could not provide Leary with any "guidance."  In fact, as we note in the text, the court appropriately provided Leary with such guidance a bit later in the hearing, before the parties began their presentations of evidence, when the court explained the evidence rules, including the rule prohibiting hearsay, and the process that would be used during the course of the hearing.  Rule 2.6(C) of the Maine Code of Judicial Conduct states:

A judge may take affirmative steps, consistent with the law, as the judge deems appropriate to enable an unrepresented litigant to be heard.  A judge may explain the requirements of applicable rules and statutes so that a person appearing before the

the GAL provided the contrary.  Nonetheless, the court excused the GAL and, after explaining the hearing process to Leary, proceeded to take evidence on the parties' motions.

[¶7]  During the ensuing hearing, Leary called a number of witnesses, including the child's case manager, Banks, and himself.  Leary examined each witness, questioning several of them about the contents of the GAL report.  He referred to specific findings in the report and at times read directly from the report even though it was not admitted in evidence until later in the hearing. Leary testified near the end of the hearing.  Near the beginning of his testimony, while he was again addressing the GAL report, the court asked whether the parties intended to introduce the report into evidence "pursuant to the statute." Banks responded in the affirmative, and Leary—even though he was on the witness stand—said nothing in opposition.  Having received no objection, the court admitted the GAL report in evidence.

---

judge understands the process to be employed.  A judge may also inform unrepresented individuals of free or reduced cost legal or other assistance that is available in the courthouse or elsewhere.

The Advisory Note explaining Rule 2.6(C) states that the rule "should be regarded as providing continuing ethical guidance . . . for judges providing appropriate support for unrepresented litigants *to assure that the goals of fairness and equal access to the judicial process are supported.*"  M. Code Jud. Conduct R. 2.6 Advisory Note to 2015 Code (emphasis added).

6

[¶8]  A month after the hearing, the court entered an order providing for "parallel, but not fully shared" parental rights and responsibilities.  The court ordered that the child would reside primarily with Banks and restricted Leary's contact with the child until after he completed a psychological evaluation and follow-up treatment and the child's treatment providers determined that contact was appropriate.  In support of that parenting structure, the court found, among other things, that Leary had been "apparently oblivious" to several crises the child had experienced, that Leary had acted inappropriately at those times, and that Leary "lacks the necessary capacity to support [the child's] emotional needs."  The court found that Banks has a greater capacity to secure "proper and necessary" care for the child and was capable of encouraging and facilitating contact between the child and Leary.  Leary filed a timely appeal from the judgment.  *See* 19-A M.R.S. § 104 (2018); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶9]  Title 19-A M.R.S. § 1507(5) (2018) provides:

> A guardian ad litem shall make a final written report to the parties and the court reasonably in advance of the hearing.  The report is admissible as evidence and subject to cross-examination and rebuttal, whether or not objected to by a party.

Rule 4(b)(7) of the Maine Rules for Guardians Ad Litem contains language that is nearly identical.[2] The essential issue presented here is whether, given the provisions of section 1507(5) and Rule 4(b)(7), the court erred by admitting the GAL report in evidence, albeit without objection, when the GAL was not subject to examination because the court had excused her from attending the hearing.[3] We review evidentiary rulings for an abuse of discretion or clear error, *see In re Jonas*, 2017 ME 115, ¶ 37, 164 A.3d 120, and procedural due process challenges de novo, *see In re Adden B.*, 2016 ME 113, ¶ 7, 144 A.3d 1158.

[¶10] In contested family proceedings involving a minor child, the court may appoint a GAL "when the court has reason for special concern as to the welfare" of the child. 19-A M.R.S. § 1507(1); M.R. Civ. P. 107(a)(2); M.R.G.A.L. 4(b). The GAL's role is to gather information and make recommendations that would promote the best interest of the child. *See* 19-A M.R.S. § 1507(4) (2018)

---

[2] Rule 4(b)(7) of the Maine Rules for Guardians Ad Litem provides:

> *Written report.* A guardian ad litem shall provide a copy of any required final written report to the parties and the court at least 14 days in advance of the final hearing. The report is admissible as evidence and subject to cross-examination and rebuttal, whether or not objected to by a party.

[3] Leary does not directly challenge the court's ultimate modification of the divorce judgment. Any such challenge would be unavailing on this record because the court's findings were supported by the evidence and the court's ultimate determination was not an abuse of its discretion. *See Little v. Wallace*, 2016 ME 93, ¶ 12, 142 A.3d 585 (stating the standard of review on an appeal from a judgment on a motion to modify).

8

(a GAL "shall use the standard of the best interest of the child as set forth in [19-A M.R.S. § 1653 (2018)]" when reporting findings and recommendations to a court); *see also Kennedy v. State*, 1999 ME 85, ¶ 10, 730 A.2d 1252. Among the GAL's duties is the preparation of a final written report, *see* 19-A M.R.S. § 1507(5), that "offers the court a compendium of information that aids the court in determining the best interests of the child." *Richards v. Bruce*, 1997 ME 61, ¶ 10, 691 A.2d 1223.

[¶11]   Section 1507(5) and Rule 4(b)(7) specifically authorize the admission of the GAL report into evidence. *See also In re Caleb M.*, 2017 ME 66, ¶ 20, 159 A.3d 345 (discussing 22 M.R.S. § 4005(1)(D) (2018), which provides for the admissibility of GAL reports in child protection proceedings); M.R. Evid. 802 (providing that hearsay is not inadmissible if a statute provides for its admissibility).  That authority predicates the admission of the report on the parties' opportunity to examine the GAL.[4]   There are two reasons for this requirement.

---

[4]   Although both 19-A M.R.S. § 1507(5) (2018) and Maine Rules for Guardians Ad Litem, Rule 4(b)(7) are framed in terms of the parties' opportunity to cross-examine the *report*, this obviously means the right to cross-examine the *GAL*.  *Cf. Ziehm v. Ziehm*, 433 A.2d 725, 728-29 (Me. 1981) (stating that, in divorce proceedings, the admissibility of a Department of Health and Human Services investigative report, 19-A M.R.S. § 905 (2018), is statutorily predicated on the parties' opportunity to examine the author of the report).

[¶12]  First, as we have held, "the most effective challenge to the quality, completeness, or competence of a guardian ad litem's work will be accomplished through cross-examination of the GAL at trial."  *Wechsler v. Simpson*, 2016 ME 21, ¶ 17, 131 A.3d 909 (quotation mark omitted). Consequently, for there to be a full explication of the GAL's opinions and recommendation, which would be important for the court to determine how much weight to assign to that information, the opportunity for cross-examination of the GAL is necessary.

[¶13]  Second, the right to cross-examine the GAL about the report has constitutional significance because it is part of the process that serves to protect parents' "fundamental liberty interest to direct the care, custody, and control of their children."  *Gehrke v. Gehrke*, 2015 ME 58, ¶ 24, 115 A.3d 1252 (quotation marks omitted); *see also In re Caleb M.*, 2017 ME 66, ¶ 21, 159 A.3d 345 (stating, in the context of the statutory admissibility of a GAL report, that due process requires, among other things, "the right to introduce evidence and present witnesses, [and] the right to respond to claims and evidence" (quotation marks omitted)); *Jusseaume v. Ducatt*, 2011 ME 43, ¶ 13, 15 A.3d 714 (stating that the opportunity to cross-examine adverse witnesses "is

constitutionally required in almost every setting where important decisions turn on questions of fact" (quotation marks omitted)).

[¶14] As a general matter, a party is responsible for bringing claims of error to the trial court's attention in a timely manner so that any error may be addressed and remedied while that opportunity remains. *See Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 9, 165 A.3d 357 ("An issue is raised and preserved if there was a sufficient basis in the record to alert the court and any opposing party to the existence of that issue." (quotation marks omitted)). This is true even with claimed errors of constitutional magnitude. *See Dowling v. Bangor Hous. Auth.*, 2006 ME 136, ¶ 13, 910 A.2d 376. Here, even though Leary was given full opportunity to be heard on the admissibility of the GAL report when the court inquired whether it was to be admitted, Leary voiced no objection.[5] As even Banks recognized at oral argument, it would be error for the court to admit the GAL report over a party's objection in the circumstances presented here. But because Leary did not object to the report's admission, the

---

[5] Leary objected to the court's release of the GAL before the hearing began, but he did not object to the report itself being admitted in evidence much later in the hearing. By then, considerable evidence had been presented to the court, including evidence that overlapped with some of the contents of the report. Because of the very different contexts and circumstances of those two events during the hearing, Leary's objection to the court's decision to excuse the GAL cannot be seen to carry over and constitute an objection to the admissibility of the report.

issue may be deemed not to have been properly preserved and therefore waived for appellate review.

[¶15]  Section 1507(5) and Rule 4(b)(7) provide, however, that the GAL report is admissible subject to cross-examination of the GAL and rebuttal, "whether or not objected to by a party."  19-A M.R.S. § 1507(5); M.R.G.A.L. 4(b)(7).  We need not decide if this means that a claim of error that is not properly preserved pursuant to well-established principles of trial and appellate practice is nonetheless preserved for appellate review by operation of statute and rule because even if Leary's claim of error is properly before us, the court's admission of the GAL report was harmless error.  *See* M.R. Civ. P. 61; *Shaw v. Packard*, 2005 ME 122, ¶ 13, 886 A.2d 1287.  The harmlessness of any judicial error is demonstrated in two ways—by the nature of Leary's presentation at the hearing, and by the court's limited reliance on the GAL report, as articulated in the judgment.

[¶16]  First, the record demonstrates that Leary was able to sufficiently challenge the report at the hearing without cross-examining the GAL.  Leary examined each of the witnesses who testified, several of whom had been interviewed by the GAL during her investigation, as documented in her report.  Leary also directly challenged the contents of the report, examining a family

friend with specific questions about the report and her impression of its conclusions, and testifying about its contents himself. Further, the court gave Leary a significant amount of latitude during his evidentiary exploration of the report.

[¶17] Further, Leary was one of the last witnesses to testify and, while doing so, discussed specific points contained in the report, which was admitted—again, without Leary's objection—during the first part of his testimony. Shortly after the report was admitted in evidence and Leary had already addressed some of its contents, Leary articulated what he described as "the last statement" he wanted to make about the GAL report. At the end of his testimony, the court asked Leary if he had any further testimony to present, and Leary responded that he did not. From this, it is evident that Leary presented all of the evidence he wanted to develop. Importantly for our analysis, nothing in the record indicates that Leary was unable to develop additional support for his position beyond what is contained in the record—Leary did not make an offer of proof, for example, identifying any additional points he had been unable to pursue because he could not examine the GAL. Because Leary has not demonstrated that the admission of the GAL report without an opportunity to cross-examine her either foreclosed him from making challenges to the report

beyond those that he made or otherwise resulted in gaps in the evidence, we can only conclude that any error was harmless.

[¶18]  Second, the limited discussion of the GAL report in the judgment also shows that any error in admitting the report was harmless.  The judgment's reference to the report was confined to the GAL's account of several mental health records, which she had reviewed pursuant to the order of appointment. The court discussed the mental health history of both parents but declined to adopt a particular diagnosis for Leary described in the GAL report—a finding that was favorable to Leary because he disagreed with that diagnosis.  The court also discussed certain issues affecting the child as described in the report. Although this information was contained in the GAL report, there was other germane competent evidence on which the court reached its ultimate conclusion.  The child's case manager testified, and documents relating to the child's treatment were admitted in evidence.  *See In re Elijah R.*, 620 A.2d 282, 285-86 (Me. 1993) (stating that a trial court's error in relying on improperly admitted evidence is harmless when the improperly admitted evidence is cumulative to competent evidence in the record).  And more generally, the court heard testimony from a number of witnesses, including both Banks and Leary, who discussed issues affecting the child.

14

[¶19] "Any alleged error of the trial court that does not affect the substantial rights of a party is harmless and therefore must be disregarded." *Shaw*, 2005 ME 122, ¶ 13, 886 A.2d 1287; *see also* M.R. Civ. P. 61. The erroneous admission of evidence that affects a party's constitutional interests is harmless if "it is highly probable that admission of the evidence did not affect the judgment." *See In re M.B.*, 2013 ME 46, ¶ 34, 65 A.3d 1260; *Greaton v. Greaton*, 2012 ME 17, ¶ 7, 36 A.3d 913 ("In appealing a judgment, it is not enough to challenge procedural errors allegedly made by the trial court without also showing actual error in the judgment."). Here, even applying the more exacting of these standards of review, and assuming that Leary is entitled to challenge the admission of the GAL report despite his failure to object, it is highly probable that the court's admission of the report did not prejudice Leary or materially contribute to the court's ultimate determination. The court's admission of the GAL report therefore was, at most, harmless error.

The entry is:
>Judgment affirmed.

Roderick H. Potter, Esq. (orally), Law Office of Roderick Potter, Saco, for appellant Patrick R. Leary

Brittany M.R. Sawyer, Esq. (orally), Holmes Legal Group, LLC, Wells, for appellee Kathy J. Banks

Biddeford District Court docket number FM-2017-156
FOR CLERK REFERENCE ONLY